IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ACTIVE DISPOSAL, INC; ALL WASTE DISPOSAL APEX INTERIORS, INC.; BOSMAN DISPOSAL; BOXCO, INC.; C.M. ROOF SYSTEMS, INC.; CFS ENTERPRISES, INC; CIRCLE M DUMPSTER SERVICE, INC.; DISPOSAL MANAGEMENT SYSTEMS, INC.; ECONOMY DISPOSAL SERVICES, INC.; FEZE ROOFING, INC.; LAWRENCE E. GUSTAFASON ROOFING, INC.; J.L. ROLL-OFF SERVICE, INC.; K. HOVING RECYCLING & DISPOSAL, INC.; LIBERTY WASTE & RECYCLING SERVICE, INC.; MBL RECYCLING, INC.; MOLENHOUSE ENTERPRISES, INC.; MURPHY ROOFING, INC.; NICHOLAS & ASSOCIATES, INC.; OMNI COMMERCIAL GROUP, INC.; OSTRANDER CONSTRUCTION, INC.; PRAIRIELAND DISPOSAL, INC.; PREMIUM DISPOSAL, INC.; RECYCLING SYSTEMS, INC.; ROLL-ON ROLL-OFF, INC.; TRASH CAN RECYCLING, LLC; WASTEBOX, INC.; and WASTE ONE, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 09 C 2930 |
| vs. | ) ) ) | |
| CITY OF DARIEN; CITY OF EVANSTON; CITY OF OAK BROOK TERRACE; CITY OF PROSPECT HEIGHTS; VILLAGE OF ADDISON; VILLAGE OF HOFFMAN ESTATES; VILLAGE OF MT. PROSPECT; VILLAGE OF NILES; VILLAGE OF NORTHFIELD; VILLAGE OF WHEELING; and VILLAGE OF WILMETTE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

1

The plaintiffs in this case are companies that provide hauling and disposal services to customers who use "roll off" containers for waste and recycling, and corporations that would like to use the services of those hauling and disposal companies. The defendants are Illinois municipalities that have adopted ordinances giving exclusive contracts for waste and recycling hauling to waste disposal firms other than the plaintiffs. Plaintiffs allege that defendants' exclusive contracts violate the Contract and Due Process Clauses of the United States Constitution and interfere with competition in violation of the Sherman Act. Plaintiffs also allege that defendants have tortiously interfered with plaintiffs' contracts and prospective economic advantage and have committed antitrust violations under Illinois law. Defendants have moved to dismiss plaintiffs' claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the motion with regard to all federal law claims and dismisses the state law claims for lack of supplemental jurisdiction.

**Background**

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008). The Court takes the following facts from the allegations in plaintiffs' amended complaint.

There are two groups of plaintiffs in this case. The first group (the "hauler plaintiffs") consists of companies in the business of hauling and removing private and commercial waste containers, commonly referred to as "roll off" containers. The

2

second group (the "customer plaintiffs") consists of businesses that have employed one or more of the hauler plaintiffs in the past and wish to retain their services in the future. The defendants are Illinois municipalities that have enacted ordinances that establish exclusive contracts with companies other than the hauler plaintiffs to conduct all of the hauling of roll off containers within their borders. These ordinances prohibit the hauler plaintiffs from removing roll off containers from property within the defendant municipalities and prohibit the customer plaintiffs from hiring any hauler other than the one that holds the exclusive contract for garbage removal in a defendant municipality.

The challenged ordinances were passed pursuant to 735 ILCS 5/11-19-1, which gives municipalities the authority to enter into exclusive contracts for waste disposal. Plaintiffs allege, however, that this statute prohibits exclusive contracts for materials that can be recycled. Because the defendant municipalities' ordinances include recyclable materials, plaintiffs argue, the ordinances are not permitted by the state law.

Plaintiffs allege that the ordinances passed by defendant municipalities interfere with their business operations and impermissibly restrict their rights to enter into contracts. In count 1, they allege that the ordinances violate article I, section 10 of the United States Constitution (the Contract Clause) and interfere with their substantive due process rights under the Constitution's Fourteenth Amendment. In counts 2 and 3, plaintiffs allege that the ordinances tortiously interfere with their existing business relationships and prospective economic advantage, in violation of Illinois common law. In count 4, plaintiffs allege that the ordinance violates section 2 of the Sherman Act, 15 U.S.C. § 2. In count 5, they allege that the ordinances violate the Illinois Antitrust Act, 740 ILCS 10/3.

**Discussion**

Defendants have moved to dismiss all of plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a) "requires that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)). The statement must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the plaintiff is not required to give detailed factual allegations, she must allege facts that "raise a right to relief above the speculative level." *Id.*

**A.  Contract Clause claim (count 1)**

The Contract Clause prohibits a state from passing any law "impairing the Obligation of Contracts." U.S. CONST. art. 1 § 10. Plaintiffs allege that the defendants' ordinances granting exclusive franchise contracts for waste hauling preclude plaintiffs from maintaining their businesses in violation of the Contract Clause.

Courts employ a three part test to determine whether a law violates the contract clause. A court must determine whether the ordinance operates as a substantial impairment of existing contractual relationships; whether the municipality has a significant and legitimate purpose justifying the ordinance; and whether the effect of the ordinance on contracts is reasonable and appropriate given the public purpose behind the ordinance. *Chicago Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 736 (7th

Cir. 1987), citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983).

To satisfy the first element of the test, the contract allegedly impaired must exist at the time the challenged law is enacted. *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982). The plaintiffs' complaint identifies no contract of any plaintiff that existed at the time any of the defendant municipalities' ordinances were passed and was thereby impaired. The complaint makes passing reference to "maintaining existing contracts," Compl. ¶ 65, but it says nothing about which (if any) plaintiffs held such contracts, the terms of those contracts, or how they were impaired by the contested ordinances. Though Rule 8(a)(2) does not require a complaint to include "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks and citations omitted). The brief non-specific mention of "existing contracts" in the complaint is insufficient to allege a substantial impairment of an existing contract.[1]

**B.     Substantive due process claim (count 1)**

Count 1 of the complaint also includes an allegation that the challenged ordinances "effectively [prohibit] Plaintiffs from enjoying their right to use their property and obtain and maintain a livelihood in violation of the Fourteenth Amendment" to the United States Constitution. Compl. ¶ 66. To prevail on the claim that the ordinances interfere with their substantive rights, the plaintiffs must demonstrate "either that the

---

[1] For this reason, the Court need not address whether plaintiffs have adequately alleged the remaining elements of a viable Contract Clause claim.

ordinance[s] [interfere] with a fundamental liberty interest, or that the ordinance[s] [are] arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County, Ind.*, 57 F.3d 505, 514 (7th Cir. 1995) (internal citations omitted).

All of the plaintiffs in this lawsuit are corporations. Though the fundamental rights guaranteed by the Fourteenth Amendment may include the right of an individual to contract, *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972), "corporations do not have fundamental rights – that term describes only personal liberties." *Pro-Eco*, 57 F.3d at 514.

Therefore, to prevail on their substantive due process claim, plaintiffs must demonstrate that the ordinance is arbitrary and unreasonable. *Id.* Each of the challenged ordinances identifies a public health or economic justification for its enactment. This is sufficient to satisfy the highly deferential rational basis test, which defeats the plaintiffs' substantive due process claim. *Id.* ("[G]overnmental action passes the rational basis test if any sound basis may be hypothesized.") (quoting *Northside Sanitary Landfill, Inc. v. City of Indianapolis*, 902 F.2d 521, 522 (7th Cir. 1990)). The Court therefore grants defendants' motion to dismiss the Fourteenth Amendment claim in count 1.

**C.  Sherman Act claim (count 4)**

Plaintiffs allege that by enacting the challenged ordinances, the defendants "have engaged in anti-competitive conduct directed at accomplishing the unlawful purpose of creating and maintaining a monopoly in the Roll Off market to bar citizens

from availing themselves of the service of Roll Off vendors of their choice." Compl. ¶ 86. Plaintiffs maintain that this constitutes the creation and maintenance of a monopoly in violation of section 2 of the Sherman Act, 15 U.S.C. § 2.

Defendants assert that they are exempt from antitrust liability under the "state action" exemption to federal antitrust law. In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court construed the Sherman Act to exempt a state, acting through its legislature, from antitrust liability arising from anticompetitive conduct. *Id.* at 350-52.

A municipality's actions can qualify for the state action exemption if "[its] anticompetitive activities were authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38-39 (1985) (citing *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413 (1978) (opinion of Brennan, J.)). In *Town of Hallie*, the Supreme Court considered "how clearly a state policy must be articulated to be able to establish that its anticompetitive activity constitutes state action." *Id.* at 40. At issue in *Town of Hallie* was a Wisconsin state law relating to provision of sewer services. The state law authorized Wisconsin cities to provide sewage services and gave the cities the authority to determine the area to be served. *Id.* at 42. Reasoning that "anticompetitive effects logically would result from this broad authority to regulate," the Court held that the anticompetitive effects were pursuant to a state policy and therefore fell within the state action exemption.

In *Town of Hallie*, the Court held that for the state action exemption to apply, a state law need not compel a municipality to act in the allegedly anticompetitive way, nor

7

is it necessary that the state actively supervise the municipality's actions. *Id.* at 46. Rather, a municipality's anti-competitive actions need only be a "foreseeable result" of a state law to qualify for the exemption. *Id.* Foreseeability does not require that a statute or its legislative history expressly state that the legislature intended the delegated action to have an anticompetitive effect. *Id.* at 43. As the Supreme Court cautioned, "requiring such a close examination of a state legislature's intent to determine whether the federal antitrust law apply would be undesirable . . . because it would embroil the federal courts in the unnecessary interpretation of state statutes." *Id.* at 44 n.7. Rather, a court can infer that the legislature contemplated anticompetitive action if the state statute "clearly articulate[d] and affirmatively express[ed] state policy to displace competition with regulation." *Id.* at 44 (internal quotation marks omitted). Provided they were taken "pursuant to a clearly articulated state policy to replace competition . . . with regulation," *id.* at 47, a municipality's anticompetitive actions are subject to the state action exemption from antitrust liability.[2]

The Seventh Circuit has broadly interpreted the concept of foreseeability in applying *Town of Hallie*. In *LaSalle Natl. Bank v. County of DuPage*, 777 F.2d 377 (7th Cir. 1985), the court ruled that municipalities were exempt from federal antitrust liability for allegedly anticompetitive acts undertaken in the provision of sewer services. The court held that anticompetitive conduct was foreseeable based on an Illinois state

---

[2]Several of the defendants are home rule municipalities, which are granted broad power to legislate by the Illinois State Constitution. ILL. CONST. art. VII § 6. This does not change the antitrust analysis. Home rule municipalities' actions may be exempt from antitrust scrutiny if they constitute municipal action to carry out clearly articulated and affirmatively expressed state policy." *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 52 (1982).

statute that authorized municipalities to "furnish sewerage service to municipal corporations and enter into and perform contracts with any municipality for the furnishing of sewerage service" and a statute that authorized the Illinois Environmental Protection Agency to plan with municipalities how to reduce water pollution. *Id.* at 381-82 (internal citations omitted).

In the same case, the court held that municipalities were exempt from antitrust liability arising out of zoning decisions, even those made in alleged collusion with other municipalities, because the Illinois legislature had authorized them to "regulate and restrict the location and use of buildings, structures and land for trade, industry, residents, and other uses." *Id.* at 383 (internal citation omitted). In so ruling, the Court inferred foreseeability from the legislature's stated purpose for the law, which included: "the promotion of public health, safety, morals, comfort, and general welfare, conserving the values of property throughout the country, [and] lessening or avoiding congesting in the public streets and highways." *Id.* The court noted that "[t]hese purposes, although not necessarily in conflict with the policies of the antitrust laws, are not necessarily consistent with them either, and to that extent the legislature can be said to have foreseen anticompetitive effects." *Id.*

In *Campbell v. City of Chicago*, 823 F.2d 1182 (7th Cir. 1987), the Seventh Circuit held that the City of Chicago was exempt from antitrust liability for its actions to cap the number of available taxicab licenses, because an Illinois statute authorized it to "license, tax, and regulate hackmen, dragmen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations, and [to] prescribe their

9

compensation." *Id.* at 1184. The court concluded that "as the anti-competitive effects would logically result from the authority to regulate," the state action exemption applied. *Id.* More recently, in *Justice v. Town of Cicero*, 577 F.3d 768, 775 (7th Cir. 2008), the court held that an Illinois law that authorized local governments to "make all needful rules and regulations concerning the use of water supplied by the waterworks of the city or village" and to fix and collect water rates "as the corporate authorities may deem necessary or expedient" was sufficient to exempt the town from antitrust liability. *Id.*

The defendants argue that their ordinances fall within the state action exemption. They rely on 65 ILCS 5/11-19-1(a), which provides that "[a]ny city, village or incorporated town may make contracts . . . with any person, corporation, or county . . . for more than one year and not exceeding 30 years relating to the collection and final disposition, or relating solely to either the collection or final disposition of garbage, refuse and ashes." The defendants argue that anticompetitive effects are a foreseeable result of the statute's express authorization for municipalities to enter into contracts for garbage collection.

Plaintiffs argue that to the extent the contested ordinances create exclusive contracts for the hauling and removal of materials meant to be recycled, they were not authorized by the Illinois legislature. Plaintiffs cite section 5 of the statute, which provides:

> Every city, village or incorporated town may provide such method or methods as shall be approved by the corporate authorities for the disposition of garbage, refuse, and ashes. Any municipality may provide by ordinance that such method or methods shall be the exclusive methods for the disposition of garbage, refuse and ashes to be allowed within that municipality. Such ordinance may be enacted notwithstanding the fact that competition may be displaced or that such

> ordinance may have an anti-competitive effect. . . . *Material that is intended or collected to be recycled is not garbage, refuse, or ashes*.

65 ILCS 5/11-19-5 (emphasis added). Plaintiffs argue that the statutory language italicized in the quotation means that the legislature did not authorize municipalities to enter into exclusive contracts for the collection of recyclable materials. Because the disputed ordinances apply to recyclable materials as well as garbage, plaintiffs argue, they are not permitted by the state statute and are therefore not within the state action exemption.

Defendants contend that section 5 of the statute, including its narrow definition of "garbage, refuse, and ashes," applies only to ordinances that establish a particular method of waste disposal, such as landfilling or incinerating. They argue that their ordinances were passed not pursuant to section 5 but under section 1, which permits them to enter into contracts with private entities for waste collection. The ordinances establishing exclusive hauling contracts for roll of containers bring them within the state action exemption, defendants argue, because the anticompetitive effect of the ordinances is a foreseeable result of section 1. Section 1 defines "garbage, refuse, and ashes" to include such items as cardboard, glass, paper, and tin cans, all of which are recyclable. 65 ILCS 5/11-19-1(d) & 5/11-19-2. Defendants argue that even if the ordinances cover containers that may include recyclable materials, they are still authorized by the statute, because such materials fall within the statutory definition of "refuse" as used in section 1.

The plaintiffs concede in their response to the motion to dismiss that 65 ILCS 5/11-19-1(a) "permits adoption of ordinances providing for the exclusive contracts for

the 'collection and final disposition, or relating solely to either the collection or final disposition of garbage, refuse, and ashes.'" Pls.' Resp. to Mem. in Supp. of Mot. to Dismiss at 7. Plaintiffs further state that "the enabling legislation very clearly and very properly permits exclusive contracts when the issue is the disposal and hauling of waste and garbage." *Id.* at 9. They go on to argue, however, that because the only mention of exclusivity is in section 5, which more narrowly defines "garbage, refuse and ashes" not to include recyclable materials, the narrower definition should be applied to the disputed ordinances, and the Court should find they are not authorized by the state legislature.

The Court concludes that the disputed ordinances fall within the state action exemption as defined by *Town of Hallie*. Section 1 of the statute permits municipalities to enter into contracts for the hauling and disposal of garbage, refuse, and ashes, (defined in Section 2 to include recyclable materials). 65 ILCS 5/11-19-1(a). This constitutes the kind of "state policy to displace competition with regulation" that the Supreme Court found sufficient in *Town of Hallie* to bring an otherwise anticompetitive statute to come within the state action exemption. *Town of Hallie*, 471 U.S. at 44. As in *Campbell*, "the anti-competitive effects [of the ordinances] . . . logically result from the authority to regulate." *Campbell*, 823 F.2d at 1182. Because the challenged ordinances are a foreseeable result of the authority granted by the Illinois state legislature in section 1 of the statute, they fall within the state action exemption.[3] The Court therefore dismisses count 4.

---

[3] For this reason, the Court need not resolve the parties' disputes regarding the precise interplay of sections 1 and 5.

**D. Remaining claims**

All of the remaining claims in the plaintiffs' complaint are based on Illinois state law. Because the Court has dismissed all of the federal claims contained within the plaintiffs' complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367©. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss as to counts 1 and 4 of the plaintiffs complaint. Because there are no remaining federal law claims, the Court declines to exercise jurisdiction over the remaining state law claims, and dismisses the remaining claims without prejudice. The Court will enter final judgment unless, on or before April 22, 2010, plaintiffs file a proposed amended complaint that states a viable federal claim. The case is set for a status hearing on April 27, 2010 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 31, 2010